THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 8:21-cr-00156-DLB-1 |
| | ) | |
| LORENZO MICHAEL LAMBERT, | ) | |
| *Defendant*. | ) | |

<u>REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE</u>

Lorenzo Lambert, by and through undersigned counsel, respectfully submits this Reply to Government's Response to Defendant's Motion to Suppress Tangible Evidence. In support of this Reply, counsel submit the following.[1]

## I.    MR. LAMBERT'S BAG

The government relies on *California v. Hodari D.*, 499 U.S. 621 (1991), *United States v. Ferebee*, 957 F.3d 406, 412 (4th Cir. 2020), *United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995), and *United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir. 2005), for its proposition that defense's challenge to the admissibility of the contents of Mr. Lambert's bag is foreclosed because he intentionally abandoned his bag prior to his arrest. *See* ECF No. 69 at 10. These cases do not add to the current discourse. For instance, in *Leshuk*, 65 F.3d at 1110, and *Stevenson*, 396 F.3d at 542, the defendants expressly disclaimed ownership of the property at issue. Additionally, unlike in *Hodari D.*, 499 U.S. 621, it is arguable at which point Mr. Lambert was seized for purposes of the Fourth Amendment—before or after he fled. For a person to be seized, the operative question

---

[1] The facts set forth in the various warrants or orders and their accompanying applications and affidavits overlap significantly; accordingly, counsel incorporate all applicable arguments throughout the entirety of this filing.

is whether the person would have felt free to leave or terminate the encounter. *See United States v. Stover*, 808 F.3d 991, 996-97 (4th Cir. 2015) (finding the defendant seized where the officers, who blocked his vehicle, were armed and uniformed, approached him immediately, activated their vehicle's emergency lights, trained a spotlight on him, and drew their weapons); *United States v. Watkins*, 816 Fed. Appx. 821, 825 (4th Cir. 2020) (citations omitted).

Prior to being forced to stay on the ground, Mr. Lambert was woken up surrounded by police cars, a helicopter, and officers with their guns drawn. *See* Exhibit M. He complied until he felt like his life was in danger.

Further distinguishing the facts at issue here, Mr. Lambert did not abandon the bag. Property is not abandoned where the defendant demonstrates a subjective expectation of privacy that is objectively reasonable. *See United States v. Ferebee*, 957 F.3d 406, 412 (4th Cir. 2020); *United States v. Small*, 944 F.3d 490, 503 (4th Cir. 2019) (concluding that the defendant no longer had a "reasonable expectation of privacy in th[e] phone" when he also left multiple other items, including the shirt he was wearing behind on National Security Agency ("NSA") property as he fled law enforcement, suggesting his phone did not slip out of his pocket, and he did not attempt to retrieve his phone after he successfully evaded law enforcement). Accordingly, where a defendant intends to return to the property in question at a later time, the property is not abandoned. *See Small*, 944 F.3d at 503; *Tait v. United States*, 763 F. Supp. 2d 786 (E.D. Va. 2011). Instead, in order to abandon property, a defendant must voluntarily dispel any reasonable expectation of privacy in that property. *See Small*, 944 F.3d at 503.

The Fourth Circuit has made clear that "[p]hysical movement alone does not negate the possibility that a seizure may nevertheless have occurred." *United States v. Stover*, 808 F.3d 991, 1001 (4th Cir. 2015) (citation omitted). Moreover, the Fourth Circuit has suggested that an effort

to conceal evidence or contraband, by itself, does not constitute non-submission. *See id.*; *see also Smith v. Ohio*, 494 U.S. 541, 543-44 (1990) ("[A] citizen who attempts to protect his private property from inspection, after throwing it on a car to respond to a police officer's inquiry, clearly has not abandoned that property.").

Mr. Lambert did not abandon his bag voluntarily. Mr. Lambert was awakened by sirens and an announcement over a speaker surrounded by uniformed officers pointing their guns at him from behind their marked police car doors. He complied with the officers' demands until he heard what sounded like gunfire before officers smashed his driver side windows; only then did he flee the scene. *See* Exhibit M at 00:27:32; Exhibit D at 00:05:47. Given Mr. Lambert's disoriented and frazzled state, *see* Exhibit N at 00:04:52 (an officer sarcastically stating, "Okay, how many commands are you going to give him?"), Mr. Lambert could have just as readily dropped the bag by accident from tripping (as he does moments later) or because of the momentum of his arm swings, *see* Exhibit D at 00:07:21; Gov. Exhibit 2. Indeed, it is not readily discernable in the helicopter footage or otherwise.

Even if Mr. Lambert tried to hide the bag, this only strengthens his showing of a subjective expectation of privacy. Moreover, given the time of day, the lack of visibility, and the fact that the bag landed in the woods, it would be difficult to conclude that Mr. Lambert was running any sincere risk that a stranger would come upon his belongings. *See United States v. Whiteside*, No. 322CR00040FDWDSC, 2022 WL 16707978, at *4 (W.D.N.C. Nov. 4, 2022).

The government unsuccessfully attempts to undermine the defense's arguments in its initial filing by highlighting perceived shortcomings of some cases cited therein. *See* ECF No. 69 at 11-12. For example, the government fails to recognize a key similarity between cases defense counsel cite and Mr. Lambert's case: the search of the bag happened after the defendant was seized. *See*

*id.*; *compare* Exhibit D at 00:07:36 (apprehending Mr. Lambert on the ground), *with* Exhibit E at 00:21:11 (searching the bag). Additionally, defense counsel cited these cases for narrow propositions. *See, e.g.*, ECF No. 64 at 11 n.4 (citing *Ferebee*, 957 F.3d at 414, 417, 421, as a factually distinct case, since Mr. Lambert did not "clearly and unequivocally" disclaim ownership); ECF No. 64 at 12 (citing *United States v. Gist-Davis*, No. 20-4035 (4th Cir. May 7, 2021), for the general legal framework to analyze the propriety of the bag's search).

## II.   THE SEARCH OF 1421 SULTER TERRACE PURSUANT TO A WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE

The government argues that the most significant fact linking Mr. Lambert to 1421 Sulter Terrace "was the fact that the woman who lived there confirmed that morning that Defendant stayed at the residence, which fact was presented to [] Judge Nichols." ECF No. 69 at 13. But that information was not so explicitly set forth in the affidavit. Instead, without giving a clear timeframe, the affidavit provided, "Detectives responded to from 1421 Sutler Terrace, Oxon Hill, Prince George's County, Maryland, 20745 and spoke with a female who stated that Lambert does stay at this location." ECF No. 64-1 at 30.

The government emphasizes the importance of the fact that "both [tipsters] were expecting to receive large quantity shipments of marijuana from the same source at different times and locations, and both provided [Mr. Lambert's] phone number to law enforcement." ECF No. 69 at 13. However, the government's emphasis is misplaced. Neither tipster indicated that they knew the content of the respective parcels. And, only the woman tipster actually relayed anything substantive to officers: Mr. Lambert's alleged phone number. *See* ECF No. 64-1 at 28. It was not until Mr. Fleming's phone was searched that any connection was made between his phone and Mr. Lambert's alleged phone.

Additionally, the government's claim that, on two (2) prior separate occasions, law enforcement "confirmed" Mr. Lambert's presence at 1421 Sulter Terrace via visual surveillance is an overstatement. More accurately, in addition to identifying Mr. Lambert down the street in the car before he was ultimately arrested, there was at least (1) occasion where law enforcement surmised that they spotted Mr. Lambert because they saw someone with similar characteristics to him. *See* ECF No. 64-1 at 29 ("During that time Detective Bailey observed a black male, who had similar characteristics of the target (Lambert, Lorenzo) exit the residence carrying a black bag and get in the driver's seat of the 2008 Blue 4 Door Audi with Virginia Registration UES9538 and vehicle identification number: WA 1 EV74L68D033135.").

Of additional significance, the affiant fails to note that the GPS pings obtained via cell-site simulator were for the phone number whose subscriber was determined to be Krystal Lambert, not Mr. Lambert. *See* Exhibit L.

### III.   MR. LAMBERT HAS STANDING TO CHALLENGE THE PARCEL SEARCHES

Both the sender and the designated recipient of a package have a legitimate expectation of privacy in the contents of that package.[2] *See Walter v. United States*, 447 U.S. 649, 658 n.12 (1980). Various courts have concluded that the designated recipient maintains a reasonable expectation of privacy, even when using a different name on the package. *See id.*, 664-665 (holding that viewing without a warrant pornographic film that had been shipped using fictitious names for both shipper and consignee was an unreasonable search; implicitly rejecting the dissenters' view that use of the fictitious names "amount [ed] to a relinquishment or abandonment of any reasonable expectation of privacy"); *United States v. Villarreal*, 963 F.2d 770, 774-775 (5th Cir. 1992)

---

[2] *See also United States v. Lonabaugh*, 494 F.2d 1257 (5th Cir. 1973) (concluding that the defendant did not abandon his bag or lose standing to challenge the search of his bag where he gave it to a third party for conveyance).

(citations omitted) ("[T]his court has made clear that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names. . . . Villarreal and Gonzales never denied their possessory interest in the drums. They acted through intermediaries and used fictitious names in an effort to escape detection, but they consistently acted as if they were the one who were to receive the drums."); *United States v. Daniel*, 982 F.2d 146, 149 (5th Cir. 1993) (questioning whether the use of alias deprived the defendant of standing to challenge the search of a package, assuming he "possessed some type of legitimate expectation of privacy in connection with the package" and holding that other suspicious circumstances justified a brief detention of the package while a search warrant was obtained); *see also United States v. Pitts*, 322 F.3d 449, 457-58 (7th Cir. 2003) (discussing various legitimate reasons someone might have for not using their real name on a package). The government believes Mr. Lambert was the intended recipient of the parcels. *See, e.g.*, ECF No. 64-1 at 28, 67. The government also believes that Mr. Lambert communicated with an undercover member of law enforcement to obtain one (1) of the packages, claiming ownership. *See* Exhibit FF.

## IV.    CHALLENGES TO THE SEARCH OF MR. FLEMING'S PHONE

This week, the government provided defense counsel clarifying information as to the proper ownership of the Apple iPhone with IMEI #353890105856170 obtained from Mr. Fleming on January 26, 2021. *See* Exhibit G. Accordingly, defense counsel withdraws their arguments as to the validity of the search of the Apple iPhone with IMEI #353890105856170.[3]

---

[3] Relately, in light of the clarifying information provided by the government, defense counsel withdraws the argument that "the affiant fails to mention that the cellphone GPS data that the affiant attributes to Mr. Lambert at 1421 Sulter Terrace pertained to the phone law enforcement seized from Mr. Fleming on January 26, 2021." ECF No. 64 at 22.

## V.       NONCOMPLIANCE WITH COURT ORDERS AND WARRANTS

While developments in jurisprudence since the cases the government cites[4] were decided suggest that the Fourth Amendment requirements are co-extensive with Federal Rule of Criminal Procedure 41, warranting suppression when any aspect of Federal Rule of Criminal Procedure 41 is violated, *see* ECF No. 61 at 23-26, law enforcement's failure to provide notice on at least one (1) occasion and failure to return the completed warrant on another occasion suggest that these violation(s) were deliberate. *See United States v. Johns*, 948 F.2d 599, 604 (9th Cir. 1991). Accordingly,  suppression is warranted.

The government argues that law enforcement could not have possibly provided notice pursuant to the January 13, 2021 warrant (Exhibit H) because it did not know who the phone's actual user was. *See* ECF No. 69 at 19. However, by this point, law enforcement already knew Mr. Lambert used this phone through, *inter alia*, a parole and probation records' search, *See* ECF No. 64-1 at 28.

The government also argues that the Court should not suppress the fruits of the order because "the notice failure did not apparently offend [the] court that initially gave that order as it was kept apprised of the investigation and authorized two subsequent covert tracking requests." ECF No. 69 at 22. It is of no significance that a magistrate judge did not call into question the government's failure to provide notice. A judge cannot be assumed to remember all of the applications and/or warrant returns that cross her desk (or her colleagues' desks) over many months.  In any event, the judge would not necessarily be apprised of whether notice was properly

---

[4] The government cites *United States v. Simons*, 206 F.3d 392, 403 (4th Cir. 2000), *United States v. Hurwitz*, 459 F.3d 463, 472 (4th Cir. 2006), and *United States v. Christopher*, No. 2008-0023, 2009 U.S. Dist. LEXIS 28240 (D.V.I. Mar. 31, 2009).

provided, and the government has not represented it relayed such information to the issuing magistrate judge in this case.

Respectfully submitted,

_____/s/_____
David Benowitz, Bar No. 17672
Amy C. Collins, Bar No. 30447
Price Benowitz, LLP
409 7th Street, NW, Suite 200
Washington, D.C. 20004
O: (202) 417-6000
F: (202) 664-1331
David@PriceBenowitz.com
AmyC@PriceBenowitz.com

*Counsel for Lorenzo Lambert*

## EXHIBIT LIST

| Exhibit Name | Description |
|---|---|
| Exhibit L | Cropped Image of Call Frequency Record for 202-594-1257 |
| Exhibit M | Digital Exhibit Containing tga00344_20210311085536e0_20210311085506_01_000w.mp4 |
| Exhibit N | qda00227_20210311091729e0_20210311091700_01_000w.mp4 |

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November 2023, I have served this Reply upon all parties in this matter through the CM/ECF system.

_____/s/_____
David Benowitz